Jimmy Dale BROWN, Plaintiff-Appellant,

v.

LINK BELT DIVISION OF FMC CORP., Defendant-Appellee.

GRAHAM BOATS, INC., and Crew Services, Inc., Defendants-Appellees-Appellants,

v.

RESERVE INSURANCE CO., Defendant-Appellee,

v.

TRAVELERS INSURANCE CO., and Shell Oil Co., Defendants-Appellants.

No. 80–3362.

United States Court of Appeals, Fifth Circuit.

Jan. 20, 1982.

Charles Hanemann, Houma, La., for Travelers Ins. Co.

Benjamin W. Yancey, Rufus C. Harris, Jr., New Orleans, La., for Shell Oil Co.

John R. Martzell, New Orleans, La., & Eugene A. Booth, Baton Rouge, La., for Brown.

Leonard N. Bouzon, New Orleans, La., for Crew Services, Inc. & Graham Boats, Inc.

John J. Weigel, Madeleine Ficher, New Orleans, La., for Link Belt Division of FMC Corp.

Corinne Ann Morrison, New Orleans, La., for Reserve Insurance Company.

Before CLARK, Chief Judge, GOLD-BERG and WILLIAMS, Circuit Judges.

CLARK, Chief Judge:

The actions of the district court in this multi-party, multi-claim action have produced seven appeals. Jimmy Dale Brown appeals the district court's dismissal of his claims against the Link-Belt Division of FMC Corporation for manufacturing a defective crane. Shell Oil Company, the bareboat charterer of the M/V APACHE on which Brown was injured by the allegedly defective crane, and Shell's insurance company, Travelers Insurance Company, appeal the district court's decision denying Shell's and Travelers' cross-claims against Crew Service, an independent contractor in charge of operating the APACHE. Crew Service, Travelers, Shell and Graham Boats, the owner of the APACHE, appeal the district court's decision to stay all claims for indemnification against Reserve Insurance Company. We affirm.

I.

Brown was employed by Shell as an operator on Shell's offshore oil platforms. Shell, which had sent Brown to a platform to change a valve, arranged for the APACHE to take Brown back to his base platform. Everyone agrees that on this particular night weather and sea conditions in the vicinity were aptly described as heavy winds, rain and high seas. The captain of the APACHE informed Shell that the seas were too rough to attempt to transfer Brown from the platform to the ship. Shell's dispatcher on a nearby platform who knew the existing conditions directed the captain to attempt the transfer. The normal method of transfer, and the one used here, is to have a crane on the platform lower the employee in a personnel basket to the deck of the transfer vessel. As Brown was being lowered, the cable began to unwind rapidly. The rapid descent of the personnel basket and the erratic motion of the ship caught in the high waves resulted in the basket crashing onto the deck of the APACHE injuring Brown.

Brown was compensated by Shell, as the owner of the platform, under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901 *et seq.* (1976). He then brought a claim for negligent operation of the APACHE against Shell, its bareboat charterer; Travelers, Shell's insurer; Graham Boats, the owner of the APACHE; Crew Service, the operator of the boat; and Reserve under an insurance contract issued pursuant to the charter agreement. Brown also sued Link-Belt for manufacturing a defective crane and for failing to warn Shell that Shell's use of the crane for personnel transfer was hazardous. Shell and Travelers crossclaimed against Crew Service on the ground that Crew Service was primarily responsible for the operation of the ship. Shell, Travelers, Crew Service and Graham Boats crossclaimed against Reserve.

During the pendency of the proceedings, Reserve was placed in liquidation in an Illinois state court proceeding. The Illinois court enjoined all persons from bringing or further prosecuting any claims against Reserve. Shortly thereafter, a Louisiana state court issued an injunction, which incorporated the provisions of the Illinois order. On Reserve's request, the district court stayed the proceedings against it.[1]

Brown's claims against Shell and Link-Belt were tried before a jury. At the conclusion of plaintiff's case, the district court directed a verdict in favor of Link-Belt. It found that Link-Belt had no duty to warn Shell since the danger of using a crane to transfer passengers was open and obvious. It also held that there was no evidence on which the jury could have found that the crane was unreasonably dangerous and therefore defective. Brown's claim against Shell for negligent operation of the boat, however, went to the jury, which found that Shell was liable for $450,000 but reduced that amount by 25% because of Brown's negligence.

The district court did not submit either Brown's claim or Shell's cross-claim against

1. The district court also granted Graham Boats' motion for summary judgment. No party appealed the district court's decision to dismiss Graham Boats as a defendant.

Crew Service to the jury. On the basis of the evidence developed at trial, the district court denied both Brown's and Shell's claims against Crew Service. The court acknowledged that Crew Service's captain, as master of the ship, is normally responsible for the safety of his ship and its passengers. It found, however, that because Shell was in control of the vessel and had final authority to order the loading of the vessel, the captain was not negligent in following Shell's directions.

After the district court entered its decision, Shell agreed to settle Brown's claim for negligent operation of the APACHE. The issues which the parties now appeal are: 1) whether the district court correctly determined that Crew Service was not negligent in complying with Shell's demands; 2) whether the district court correctly directed a verdict in favor of Link-Belt and 3) whether the district court abused its discretion in staying the claims against Reserve.

## II.

■ Shell asserts that the district court committed four errors in imposing liability only on Shell. Shell claims that if it were negligent at all, it was negligent only in its capacity as the platform owner, not as the charterer of the APACHE. It also argues that section 5(b) of the LHWCA barred recovery by Brown. Because the basis of these claims is that Brown should not have recovered against Shell in the first instance, they are barred by Shell's settlement of Brown's claim against it. Shell next contends that the district court incorrectly credited a deckhand's testimony that if Crew Service had not complied with Shell's request, Shell would have discharged Crew Service. On this point, Shell notes that because the district court judge who determined Crew Service's liability did so on a record created by another district court judge,[2] the findings of the second judge need not be accorded the deference usually given to a trier of fact.

■ Shell's argument assumes that the district court's determination turned on a finding of coercion. However, this misperceives the basis of the court's ruling. The district court did not find that Shell coerced Crew Service; it found that Shell assumed primary responsibility for determining whether to transfer passengers. The record supports this finding. When the captain of the APACHE advised Shell that the weather was too bad to attempt to transfer Brown, Shell directed him to try anyway. The captain testified that it was common practice for Shell, after receiving the opinion of the captain, to make the final determination as to whether to attempt a transfer. This evidence is ample support for the district court's findings. *See Guillory v. Ocean Drilling & Exploration Co.*, 433 F.2d 833 (5th Cir. 1970) (per curiam).

Shell's final claim is that even if it did require Crew Service to participate in transferring Brown, the captain had a duty to refuse to participate. Shell relies on cases in which we have recognized that a master of a ship is the "lord of his little world." *United Geophysical Co. v. Vela*, 231 F.2d 816, 819 (5th Cir. 1956). We have also recognized that a master has a duty to make an independent assessment of the proper course of action. *See Boudoin v. J. Ray McDermott & Co.*, 281 F.2d 81 (5th Cir. 1960). Thus, even though the master of a tug complied with his shorebased owner's instructions to dock at a particular port, we held that the master negligently failed to reevaluate the advisability on remaining at that particular dock in light of changed conditions. *See id.* at 87–88. These cases reflect the court's recognition that normally the master of a ship has the final say so in deciding what risks posed by the weather and the condition of his ship will be assumed. *See Spencer Kellogg & Sons, Inc. v. Hicks,* 285 U.S. 502, 511–12, 52 S.Ct. 450, 453, 76 L.Ed. 903 (1932).

However, when an owner or person who has primary responsibility for the task be-

---

**2.** This case was initially tried before Judge R. Blake West. Judge West died during the trial. The decision denying Shell's cross-claim against Crew Service was decided by Judge Patrick E. Carr on the basis of the record developed before Judge West.

ing done is in as good a position as the master to assess the difficulty of the task, the reasons for according power and responsibility to the master diminish. *See Spencer Kellogg, supra; Petition of Kinsman Transit Co.,* 338 F.2d 708, 715 (2d Cir. 1964), *cert. denied,* 380 U.S. 944, 85 S.Ct. 1026, 13 L.Ed.2d 963 (1965). Thus, in *Guillory v. Ocean Drilling & Exploration Co.,* 433 F.2d 833, 836 (5th Cir. 1970) (per curiam), we held that the master of a service vessel was not necessarily negligent for complying with the order of a captain of a submersible drilling rig to offload equipment. Implicit in *Guillory* was the fact that the captain of the drilling rig was both experienced enough to weigh the risks involved and was in as good a position as the master of the service vessel to assess the difficulties posed by the sea and the weather. We find *Guillory* instructive here.

■ In this case, Shell's dispatcher was stationed in the area of the platform and was able to make his own assessment of the difficulties posed by the rough weather. Moreover, there is no indication that Shell's representative was too inexperienced in transferring personnel from offshore platforms to make a reasoned determination of the risks involved in such an action. Indeed, there was testimony that it was common practice for Shell to make these determinations. When a representative of Shell, who was both experienced in the task undertaken and who had first hand knowledge of the difficulties involved, chose to override the master's advice that the weather was too rough to transfer Brown, the master's acquiescence in Shell's decision did not relieve Shell of its consequences.

### III.

The district court directed a verdict in favor of Link-Belt in spite of evidence that Link-Belt was aware of the use of its 78 series crane in the offshore industry for transporting personnel, that Link-Belt knew such intended use was dangerous, and that at no time did Link-Belt warn Shell of the dangers involved. The district court held, however, that Shell clearly knew the hazards of using the crane, and thus any failure to warn could not have been a cause in fact of the accident. As to Brown's alternative theory based on strict liability, the court held that the crane could not be deemed unreasonably dangerous because cranes are the only feasible method for moving offshore personnel between vessels and platforms and thus it is a hazard common to all engaged in this business. The plaintiff takes exception to the trial court's rulings on both of these points.

As to Shell's knowledge of the risks in using the crane, the plaintiff asserts that the "sophisticated purchaser" defense is a fact question to be decided by the jury under Louisiana precedent. *Fincher v. Surrette,* 365 So.2d 860, 863 (La.App.1978). We note that in *Fincher* the jury decided the "sophisticated purchaser" issue, and thus the propriety of a directed verdict was not in issue. There can be no quarrel that whether Shell was a sophisticated buyer is a fact question. But the issue here is whether the evidence, with all the facts and reasonable inferences taken most favorably to the plaintiff, points so overwhelmingly in favor of the defendant, that the trial court could properly have concluded that reasonable minds could not differ that Shell was a sophisticated purchaser. *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir. 1969).

■ The case relied on by the plaintiffs, *Fincher,* provides a good contrast to the one at bar. There, the plaintiff, an employee of Folgers, Inc., was injured by a piece of machinery manufactured by the American Can Company. The plaintiff attempted to clean an internal part by inserting her hand into the machine before it had come to a complete stop. The court stated that Folger could not be held to the necessary degree of knowledge to render the danger one which is "open and obvious," and hence Folger was not a sophisticated purchaser to whom no warning was due. 365 So.2d at 863. Implicit in *Fincher* is the inference that Folger may not have been aware of how this machine behaved during cleaning operations, or its propensity to keep moving when a "jog" button was pushed too hard.

Here, on the other hand, Shell and the plaintiff, himself a crane operator, knew well how cranes operated in transporting personnel. Moreover, the record is clear that Shell and the plaintiff were both aware of the dangerous sea conditions existing at the time of the accident. In sum, the degree of knowledge possessed by Shell and the plaintiff were such that the trial court properly concluded that reasonable minds could not differ that FMC's failure to warn was not a cause in fact of the accident.

As to strict liability, the plaintiff attacks the trial court's directed verdict based on the conclusion that because cranes are the only means of offshore transport, they are not unreasonably dangerous. The plaintiffs contend that in Louisiana, evidence of custom or usage is only evidence to be considered and is not a defense in and of itself. *Leathem v. Moore*, 265 So.2d 270 (La.App. 1972). This argument is similar to the one concerning fact questions just discussed, but similarly falls short of properly analyzing whether the evidence was sufficiently one-sided to support a directed verdict.

■ In *Hunt v. City Stores, Inc.*, 387 So.2d 585 (La.1980), the Louisiana Supreme Court outlined the proof required in a products liability suit. The plaintiff must prove that the product was defective, i.e. unreasonably dangerous in normal use; that the product was in normal use at the time the injury occurred; that the product's defect caused the injury; and that the injury might have been anticipated by the manufacturer. In defining unreasonably dangerous, a balancing test is mandated: if the likelihood and gravity of harm outweigh the benefits and utility of the product, the product is unreasonably dangerous. 387 So.2d at 589.

■ Likelihood of harm here is tied to the factor of the crane's use in severe weather. Implicit in the district court's ruling is that the likelihood and frequency of such use, and therefore resultant harm, was slight when compared to the unquestioned utility of the crane. We agree that reasonable minds could not differ that this was so, and that the crane was not unreasonably dangerous to normal use. We affirm the directed verdict for Link-Belt.

## IV.

Shell, Travelers, Crew Service and Graham Boats all contend that the district court erred in dismissing their claims against Reserve. They argue that a federal court has the power to enter an *in personam* judgment even though there is a pending *in rem* state proceeding. They also note that because the record had already been developed in this case there was no need to be concerned about further depleting Reserve's limited resources by requiring it to put on a defense.

■ The fact that a federal court has the power to decide a claim does not, however, answer the question of whether the district court abused its discretion in deciding not to exercise its power. In *Anshutz v. J. Ray McDermott Co.*, 642 F.2d 94 (5th Cir. 1981) (per curiam), we granted a stay when the defendant insurance company was placed in liquidation while the case was on appeal. We noted that both the federal policy favoring state control over the insurance business and a reluctance to interfere with the state court's order enjoining any further prosecution of claims counseled that the federal court stay its hand. These same considerations indicate that the district court did not abuse its discretion in granting the stay in this case.

AFFIRMED.