IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

—————————

No. 97-30782

—————————

SAM GREEN

Plaintiff-Appellant,

versus

VERMILION CORPORATION

Defendant-Appellee.

—————————

Appeal from the United States District Court
for the Western District of Louisiana

—————————

June 18, 1998

Before WISDOM, JOLLY, and HIGGINBOTHAM, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

We are called to interpret a heretofore unconstrued provision of the Longshore and Harbor Workers Compensation Act, viz., the "club/camp" exclusion delineated at 33 U.S.C. § 902(3)(B). Our reading of the statute and its legislative history compels us to conclude that Green falls into the category of employees for which Congress drafted the "club/camp" exception. We AFFIRM the judgment of the district court denying LHWCA coverage to Green. We REVERSE the judgment of the district court dismissing Green's general maritime negligence and unseaworthiness claims and REMAND for further proceedings.

The Vermilion Corporation employed Green at a "duck camp" it operated pursuant to its contract with the Bayou Club. The camp is located on marsh land near a private canal off a bayou. Besides a duck camp, Vermilion uses the post as a "headquarters" for its operations in this area, which include harvesting and selling alligator eggs, trapping and selling alligators, fur trapping, shrimping, and rice farming.

During duck season, which is approximately three months long, Green worked as both a cook and watchman at the camp. During the rest of the year, Green served as a watchman, performed general maintenance on the camp and usually cooked a lunch meal for any Vermilion employees working in the area. Green worked only at the camp and was required to stay there from Monday at 8:00 a.m. to noon on Friday, except for duck season when his hours were longer. Green got to the camp via a boat and usually brought a week's worth of groceries with him on Monday morning. Green also occasionally assisted in mooring and unloading supply boats that docked at the camp.

On May 10, 1994, Lee Guidry, a Vermilion employee, was piloting THE M/V GADWALL, a vessel under eighteen tons net. Guidry radioed Green at the camp and asked him to assist in tying up the vessel and in unloading supplies and equipment. While mooring the vessel, Green boarded THE M/V GADWALL, slipped and fell on the deck. Green sustained injuries to his neck and back.

Green filed suit against Vermilion alleging claims under the LHWCA and general maritime law for negligence and unseaworthiness. The district court first granted Vermilion's motion for summary judgment dismissing Green's LHWCA claim because Green fell under the "vessel under eighteen tons net" employee exception. Then, after further briefing by the parties, the district court granted Vermilion's motion for summary judgment and reconsideration, holding that Green was excluded from LHWCA coverage by the "club/camp" employee exception. The district court dismissed the remainder of Green's claims on the grounds that the Louisiana Worker's Compensation Act was his exclusive remedy.

Green timely appealed the district court's judgments. We have jurisdiction under 28 U.S.C. § 1291.

II

This court reviews a grant of summary judgment de novo applying the same standard as did the district court. Dawkins v. Sears Roebuck & Co., 109 F.3d 241, 242 (5th Cir. 1997).

In order to qualify for coverage under the LHWCA, a worker must pass both a situs and a status test. Director v. Perini North River Assocs., 459 U.S. 297, 314 (5th Cir. 1983). Green satisfies the situs test since he was injured upon navigable waters. See id. With respect to the status test, we will assume arguendo that Green was engaged in "maritime employment", see 33 U.S.C. § 902(3); Randall v. Chevron U.S.A., Inc., 13 F.3d 888, 897 (5th Cir.), cert.

3

denied, 513 U.S. 994 (1994), since we think it clear that he falls within the "club/camp" exclusion from LHWCA coverage.

There are exceptions to the term "employee" under the LHWCA. See 33 U.S.C. § 902(3)(A)-(H). In particular, § 902(3)(B) provides:

> The term "employee" means any person engaged in maritime employment, . . . but such term does not include-
> . . . .
> (B) individuals employed by a club, camp, recreational operation, museum, or retail outlet;
> . . . .
> if individuals described in clauses (A) through (F) are subject to coverage under a State workers' compensation law.[1]  Id.

Interpretation of this provision is an issue of first impression in this circuit.

The district court held that Green fell within the "club/camp" exclusion because he performed all of his duties at the duck camp. The lower court found unpersuasive Green's argument that he was employed "by" the Vermillion Corporation, not a camp, since that construction of § 902(3)(B) renders the exception meaningless in today's world of business organizations.

Green repeats this argument to us.  Green contends that interpretation of § 902(3)(B) is controlled by the nature of the employer's business and not the employee's activities.  For support, Green points to the House Document accompanying the 1984

---

[1]The parties agree that Green falls within the purview of the Louisiana Workers' Compensation Act.

4

Amendments that added the "club/camp" exception to the LHWCA.  The House Document states that the "exclusions from the definition of 'employee' contained in the amendments . . . are intended to be narrowly construed" and that paragraph (B) excludes employees "because of the nature of the employing enterprise, as opposed to the exclusions in paragraph [(A)], which are based on the nature of the work which the employee is performing."  H. R. Doc. No. 98-570, Part I 98th Cong., 2nd Sess. 1984 U.S.C.C.A.N. (98 Stat. 1639) 2734, 2736.  Because Vermillion is involved in sundry business ventures, including maritime activities, Green claims that his employer was a multi-faceted corporation, not a "camp."

"As with any statutory question, we begin with the language of the statute."  In re Greenway, 71 F.3d 1177, 1179 (5th Cir.), cert. denied, 517 U.S. 1244 (1996).  Green makes much of Congress's use of "by" in the statute and notes that Congress did not use the phrase "employed at a club [or] camp."  Contrary to Green, we do not think that the word "by" bears such weight.  Rather, the key words in the provision are those designating the concerns the employees of which are excluded from LHWCA coverage (e.g., club, camp, restaurant, museum).  Under this focus, it is evident that Green worked exclusively to further an operation which comports with the plain meaning of the terms "camp" and "club."  The Vermillion facilities had all the trappings of a typical southern Louisiana hunting camp.  See R. Vol. 2 at 281.  Though it used the camp throughout the year, the primary reason Vermillion maintained

5

the facility was to fulfill its contractual obligation to the Bayou Club to provide a duck camp for the waterfowl hunting season.  In fact, a Vermilion officer testified that but for the lease to the Bayou Club, Vermillion would not have conducted any of its operations from this site and would not have had any need for Green's services.  See R. Vol. 2 at 287-88.  Since Green was employed solely to render services to promote and maintain a duck camp, we hold that he is excluded from LHWCA coverage under § 902(3)(B).

Green's reliance upon the legislative history of the 1984 Amendments does not alter our conclusion.  Unlike Green, we do not believe that in construing the "club/camp" exception, we are limited to considering only the nature of the employer's enterprise.  The House Document to which Green refers expressly states that businesses falling under paragraph (B) may have employees that should remain covered under the Act "because of the nature of the work which they do, or the nature of the hazards to which they are exposed."  H. R. Doc. No. 98-570, Part I 98th Cong., 2nd Sess. 1984 U.S.C.C.A.N. (98 Stat. 1639) 2737.  By the same token, we believe the opposite is true- clubs and camps may employ individuals who should not be covered under the LHWCA because their job responsibilities do not, or only minutely, involve maritime activities and they are not exposed to hazards associated with traditional maritime activities.  The record reflects that Green's duties were to be a cook, watchman, and general repairman of the

6

camp buildings.  We do not consider Green to be an employee for which LHWCA benefits were intended.

III

Even if he is not entitled to LHWCA benefits, Green argues that the district court erred in dismissing his general maritime claims against Vermilion for negligence and unseaworthiness. Vermilion disagrees based on its belief that the Louisiana Workers' Compensation Act is Green's exclusive remedy.

A

The first step in our analysis of this issue is to determine whether there is admiralty jurisdiction.  Admiralty jurisdiction requires that the tort have a maritime locality and that "the facts and circumstances of the claim must bear a significant relationship to traditional maritime activity." Thibodaux v. Atlantic Richfield Co., 580 F.2d 841, 846 n.14 (5th Cir. 1978), cert. denied, 442 U.S. 909 (1979).  The situs test is met because Green was injured while on navigable waters.  See Kelly v. Smith, 485 F.2d 520, 525 (5th Cir. 1973), cert. denied, 416 U.S. 969 (1974).  To determine whether there is a sufficient nexus to maritime activity, we examine four factors: the functions and roles of the parties; the types of vehicles and instrumentalities involved; the causation and the type of injury; and traditional concepts of the role of admiralty law.  See Kelly, 485 F.2d at 525.  In applying this test, we have noted that "[a]dmiralty has traditionally been concerned with furnishing remedies for those injured while traveling

7

navigable waters", id. at 526, and that "the relationship to traditional maritime activity required for the invocation of admiralty jurisdiction" may be present though "the threshold requirement of maritime employment necessary to establish coverage under the LHWCA" may not be met. Thibodaux, 580 F.2d at 846.

Applying the four factors, we find that Green was injured in the course of his employment while performing the traditional maritime activity of mooring a vessel; Vermilion owned the vessel on which Green fell; the vehicle involved was a vessel routinely employed on navigable waters; the alleged cause of Green's injury was an unkept deck; Green's injury was not uncommon in the maritime context; and "upholding maritime jurisdiction does not stretch or distort long evolved principles of maritime law," Kelly, 485 F.2d at 526, since federal courts have long recognized unseaworithiness and general maritime negligence claims. These facts provide a sufficient nexus to maritime activity for us to assert admiralty jurisdiction over this case. See King v. Universal Elec. Constr. Corp., 799 F.2d 1073, 1075 (5th Cir. 1986); Thibodaux, 580 F.2d at 846 n.14; Kelly, 485 F.2d at 526.

B

With respect to the merits, we note that an earlier panel of this court was "squarely presented with the issue of whether an exclusive remedy provision in a state workmen's compensation statute can operate to deprive a party of a cause of action afforded by federal maritime law." Thibodaux, 580 F.2d at 846.

8

The panel in that case concluded that relevant Supreme Court and Fifth Circuit precedent made "it clear that an exclusive remedy provision in a state workmen's compensation law cannot be applied when it will conflict with maritime policy and undermine substantive rights afforded by federal maritime law." Id. at 847. Thus, the court specifically held that "the exclusive remedy provision of the Louisiana Workmen's Compensation Act" does not preclude a plaintiff from pursuing a claim for wrongful death occasioned in state territorial waters since the Supreme Court had expressly recognized such a suit under admiralty jurisdiction. Id. at 847; see also Moragne v. States Marine Lines, 398 U.S. 375 (1970) (creating wrongful death claim in admiralty law). A later panel of this court strengthened Thibodaux by holding that irrespective of whether the defendant in the maritime tort suit is the plaintiff's "statutory employer," like in Thibodaux, or his "actual employer," federal maritime law overrides the exclusive remedy provision of the Louisiana Workers' Compensation Act in each case. See King, 799 F.2d at 1074.

The Eleventh Circuit appears to have charted a different course as it barred a plaintiff from asserting a negligence claim under general maritime law where an exclusivity provision of a state workers' compensation scheme applied. See Brockington v. Certified Elec., Inc., 903 F.2d 1523, 1533 (11th Cir. 1990), cert. denied, 498 U.S. 1026 (1991). That circuit distinguishes Thibodaux and King on the grounds that they apply only to wrongful death

9

actions, a tort for which the Supreme Court expressly recognized admiralty jurisdiction in order to provide national uniformity.  We are not persuaded that the Eleventh Circuit ruling conflicts with our precedent with respect to a  plaintiff's ability to assert a unseaworthiness claim in the face of an exclusive remedy provision of a state workers' compensation statute.

Though Thibodaux and King involved wrongful death claims, their holdings were based on the Supreme Court's pronouncement that "'[w]hile states may sometimes supplement federal maritime policies, a state may not deprive a person of any substantial admiralty rights as defined in controlling acts of Congress or by interpretative decisions of this Court.'"  Thibodaux, 580 F.2d at 846 (quoting Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 409-10 (1953)).  As the Eleventh Circuit admitted in Brockington, the Supreme Court has expressly authorized a claim for unseaworthiness in admiralty jurisdiction.  See Seas Shipping Co. v. Sieracki, 328 U.S. 85 (1946); Brockington, 903 F.2d at 1531.  That unseaworthiness is a "right peculiar to the law of admiralty" allowed the Brockington court to distinguish this court's opinion in Brown v. ITT Rayonier, Inc., 497 F.2d 234 (5th Cir. 1974), which "disregard[ed] the state worker's compensation statute in favor of permitting an action in general maritime law," from the case before it in which the plaintiff was asserting a negligence claim. Brockington, 903 F.2d at 1531.  Since both the wrongful death claim alleged in Thibodaux and King and the unseaworthiness claim

10

asserted here and in Brown trace their lineage to Supreme Court explications of admiralty law, we see no reason to give one more preemptive force than the other. With this principle, we think the Eleventh Circuit would agree. Thus, following the principles established in Thibodaux and King, we hold that the exclusive remedy provision of the Louisiana Workers' Compensation Act does not preclude Green from asserting his claim for unseaworthiness.

Our holding is supported by the history of the LHWCA and its treatment of Sieracki claims. In enacting the 1972 Amendments to the LHWCA, Congress increased the statutory benefits to longshoremen in exchange for the termination of their claims for breach of the warranty of seaworthiness. See 33 U.S.C. § 905(a); Aparicio v. Swan Lake, 643 F.2d 1109, 1117 (5th Cir. 1981). We have held, however, that longshoremen who are not entitled to LHWCA benefits may still pursue their general maritime claims against the vessel owner because they did not receive the benefits of the bargain of the 1972 Amendments. See id. at 1118 (recognizing "pockets of Sieracki seamen remaining after the 1972 amendments" to the LHWCA); Cormier v. Oceanic Contractors, Inc., 696 F.2d 1112, 1113 (5th Cir.) (Higginbotham, J.) (following Aparicio that § 905 "did not deny the warranty of seaworthiness to workers not covered by the LHWCA"), cert. denied, 464 U.S. 821 (1983). Vermilion seeks to distinguish these cases on the ground that they did not involve a situation, like in the instant case, where the longshoreman was entitled to benefits under a state workers' compensation scheme

11

which made the state compensation benefits the employee's exclusive remedy against his employer, including any claim under a dual capacity theory. See La. Rev. Stat. § 23:1032(A) (Supp. 1998).

We find Vermillion's distinction nebulous. Though Green is entitled to seek relief under the Louisiana Workers' Compensation Act, that option is not exclusive. See Sun Ship, Inc. v. Pennsylvania, 447 U.S. 715, 722 (1980) (finding concurrent federal and state jurisdiction for maritime employees covered by both the LHWCA and a state workers' compensation scheme) The 1972 Amendments to the LHWCA, "which Congress enacted to abolish the Sieracki remedy, [do] not apply to maritime workers who are not within the coverage of the LHWCA." Aparicio, 643 F.2d at 1116. Where the LHWCA does not apply, we refuse to expose maritime workers to the variegated state workers' compensation schemes, especially where Congress has expressly found that "most State Workmen's Compensation laws provide benefits which are inadequate." H.R. Doc. 92-1441, 92th Cong., 2nd Sess. 1972 U.S.C.C.A.N. 4698, 4707; see also Sun Ship, 447 U.S. at 723 n.5. Green may pursue his Sieracki claim against Vermillion despite the availability of relief under the Louisiana Workers' Compensation Act.[2]

This court's decision in Kent v. Shell Oil Co., 286 F.2d 746 (5th Cir. 1961), does not require a contrary result. In that case, Kent, a truck driver who performed all of his job duties on land,

---

[2]In so ruling, we do not intimate on the merits of Green's claim.

12

was injured while unloading pipe from a truck onto a barge. See id. at 748-49. Kent did not plead or allege a claim of unseaworthiness until he requested a jury instruction on this theory of liability. See id. at 749-50. The appellate court affirmed the district court's refusal to instruct the jury on seaworthiness. See id. at 750. Though one of the reasons for its decision was the presence of the exclusive remedy provision of the Louisiana Workers' Compensation Act, see id. at 751-52, we think Kent is factually and legally distinct from the case at bar.

In Kent, the court gave special significance to the fact that Kent was solely a land-based worker who did not perform any maritime activity and was injured on land. See id. at 751. The court analyzed the case as one involving a land tort and controlled by local law. See id. Given the weak nexus between the facts and circumstances of Kent's claim with traditional maritime activity, we doubt if admiralty jurisdiction would even lie in such a case under our current precedent. See Kelly, 485 F.2d at 525-26. In addition, no evidence supported Kent's unseaworthiness claim. See Kent, 286 F.2d at 752-53. Here, admiralty jurisdiction lies as Green was injured upon navigable waters while performing the traditional maritime activity of mooring a vessel in preparation for unloading cargo. Green also presented evidence suggesting that the deck of the vessel was in disrepair. We limit Kent, a pre-Kelly case, to its facts and do not ascribe to it the power to foreclose the assertion of an unseaworthiness claim where a state

13

workers' compensation scheme purports to be a plaintiff's exclusive remedy.

C

We next turn to whether Green may assert his general maritime negligence claim against Vermilion, his employer, despite the exclusivity provision of the Louisiana Workers' Compensation Act. We examine Green's general maritime negligence claim separately from his unseaworthiness claim. A general maritime negligence claim has a Supreme Court heritage, see Leathers v. Blessing, 105 U.S. (15 Otto) 626 (1882) (recognizing general maritime negligence claim); Pope & Talbot, 346 U.S. 406 (same), but is not as unique to admiralty law as unseaworthiness. See 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 5-2 to § 5-4 (2d ed. 1994) (discussing fundamental negligence concepts in maritime context); see also Cox v. Esso Shipping Co., 247 F.2d 629, 637 (5th Cir. 1957) (delineating differences between unseaworthiness and general maritime negligence claims). In addition, states have a greater interest in overriding negligence claims of an employee against his employer via its workers' compensation statute than a claim of unseaworthiness since states enacted employment compensation schemes to preclude precisely these types of suits. See Ellis v. Normal Life, 638 So. 2d 422, 426-27 (La. Ct. App. 1994).

We begin our discussion by noting that the Supreme Court admittedly has been "unable to give any guiding, definite rule to determine the extent of state power" in the maritime field with

14

respect to providing remedies to injured workers. <u>Davis v. Department of Labor</u>, 317 U.S. 249, 253 (1942); <u>see</u> <u>also</u> <u>Hahn v. Ross Island Sand & Gravel Co.</u>, 358 U.S. 272, 274 (1959) (Stewart, J., dissenting) (observing the Supreme Court's struggle with harmonizing federal and state compensation schemes in the maritime area); <u>Southern Pac. Co. v. Jensen</u>, 244 U.S. 205, 216 (1916) ("[I]t would be difficult, if not impossible, to define with exactness just how far the general maritime law may be changed, modified, or affected by state legislation."). There are conflicting lines deciding the force to be given an exclusive remedy provision of a state workers' compensation statute in the maritime context.[3] <u>See</u> <u>Davis</u>, 317 U.S. at 253 (listing cases).

One line of cases unequivocally holds that state workers' compensation statutes can not preclude an employee from asserting a general maritime negligence claim against his employer for injuries sustained on navigable waters during the course of his employment. <u>See</u> <u>Southern Pac.</u>, 244 U.S. at 217 (holding the New York Workers' Compensation Act unconstitutional to the extent it bars an employee from alleging a general maritime negligence claim

---

[3]Apparently the court in <u>Brockington</u> only unearthed the line of Supreme Court cases giving preclusive effect to state workers' compensation statutes since it failed to cite any of the cases recognizing the superiority of general maritime tort claims over state remedies. <u>See</u> <u>Brockington</u>, 903 F.2d at 1532. Since our holding today relies heavily on this more venerable line of Supreme Court precedent which the Eleventh Circuit did not treat, we think the split with our sister circuit which we create today will be short-lived.

against his employer); Clyde S.S. Co. v. Walker, 244 U.S. 255, 257 (1916) (following Jensen); Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 163-64 (1920) (striking down Congress's first attempt to permit application of state workers' compensation schemes in maritime field because Congress may not delegate its power to alter, amend, or revise the maritime law to the states); Washington v. W.C. Dawson & Co., 264 U.S. 219, 227-28 (1924) (invalidating Congress's second attempt to incorporate state workers' compensation statutes into federal maritime law); Gonsalves v. Morse Dry Dock & Repair Co., 266 U.S. 171, 172 (1924) (approving assertion of general maritime negligence claim by employee against his employer); Robins Dry Dock & Repair Co. v. Dahl, 266 U.S. 449, 457 (1924) (finding erroneous a jury instruction which permitted the jury to consider state law in determining whether employer was negligent because "[t]he rights and liabilities of the parties arose out of and depended upon the general maritime law and could not be enlarged or impaired by the state statute"); Northern Coal & Dock Co. v. Strand, 278 U.S. 142, 147 (1928) (reversing judgment awarding state workers' compensation benefits to widow of deceased stevedore because only federal maritime law may provide remedies); John Baizley Iron Works v. Span, 281 U.S. 222, 230-32 (1930) (denying workers' compensation benefits to ship repairman injured upon navigable waters since state law may not modify rights under admiralty law); Employers' Liab. Assurance Corp. v. Cook, 281 U.S. 233, 236 (1930) (precluding state workers' compensation award

16

because "State lacked power to prescribe the rights and liabilities of the parties growing out of the accident"); Noqueira v. New York, New Haven & Hartford R.R. Co., 281 U.S. 128, 138 (1930) (commenting that "had the petitioner been engaged in intrastate commerce, his case still would have been within the maritime jurisdiction of the Federal courts, and he would have been denied the benefits of the state compensation law"); Spencer Kellogg Co. v. Hicks, 285 U.S. 502, 513 (1932) ("The workmen's compensation law of New Jersey, the purpose of which was to supersede the common law redress in tort cases and statutory rights consequent upon death by wrongful act, and to substitute a commuted compensation for injury or death of an employee, irrespective of fault, is not applicable to the injuries and deaths under consideration.").

This line of precedent is itself supported by cases refusing to subordinate federal admiralty principles to the dictates of state law. See e.g., The Key City, 81 U.S. (14 Wall.) 653, 660 (1871) (stating that doctrine of laches, not state statutes of limitations, apply to suits enforcing maritime liens); Workman v. City of New York, 179 U.S. 552, 560 (1900) ("[I]t becomes manifest that the decisions of this court overthrow the assumption that the local law or decisions of a State can deprive of all rights to relief, in a case where redress is afforded by the maritime law and is sought to be availed of in a cause of action maritime in its nature and depending in a court of admiralty of the United States."); Atlantic Transp. Co. v. Imbrovek, 234 U.S. 52, 61-63

17

(1913) (recognizing admiralty jurisdiction over stevedore's negligence claim against employer for injuries sustained while on navigable waters); <u>Chelentis v. Luckenbach S.S. Co.</u>, 247 U.S. 372, 382 (1918) ("[N]o State has power to abolish the well recognized maritime rule concerning measure of recovery and substitute therefor the full indemnity rule of the common law."); <u>Union Fish Co. v. Erickson</u>, 248 U.S. 308, 312-14 (1919) (refusing to void maritime contract for failure to comply with state statutes of frauds); <u>Kossick v. United Fruit Co.</u>, 365 U.S. 731, 742 (1961) (same).

Other cases run directly contrary to the authorities <u>supra</u> as they purport to hold that the exclusive remedy provision of a state workers' compensation statute precludes an employee from asserting a general maritime negligence claim against his employer. <u>See Grant Smith-Porter Co. v. Rohde</u>, 257 U.S. 469, 477 (1922) (enforcing exclusive remedy provision of state workers' compensation statute so as to bar any maritime claim); <u>State Indus. Comm'n v. Nordenholt Corp.</u>, 259 U.S. 263, 276 (1922) (affirming award of workers' compensation benefits to widow of longshoremen killed while unloading a vessel on navigable waters because employment contract was not maritime in nature); <u>Millers' Indem. Underwriters v. Braud</u>, 270 U.S. 59, 64-65 (1926) (concluding that state workers' compensation statute's "exclusive features abrogate the right to resort to the admiralty court which otherwise would exist"); <u>T. Smith & Son, Inc. v. Taylor</u>, 276 U.S. 179, 181 (1928)

18

(Louisiana workers' compensation law provided the exclusive remedy because the longshoreman was killed while standing on land and not on navigable waters); Alaska Packers, Assoc. v. Industrial Accident Comm'n, 276 U.S. 467, 468-69 (1928) (affirming award of workers' compensation benefits as employee's sole remedy against employer); Sultan Ry. & Timber Co. v. Deptartment of Labor & Indus., 277 U.S. 135, 137 (1928) (rejecting constitutional attack on workers' compensation statute requiring companies engaged in maritime activities to pay into state fund); P.J. Carlin Constr. Co. v. Heaney, 299 U.S. 41, 44 (1936) (refusing to allow general maritime law claim where workers' compensation statute applied).[4]

Though there is an apparent rift in precedent, the Supreme Court harmonized its cases on the grounds that the state workers' compensation statutes could only apply where the maritime tort involved matters of local concern which had remote or no relation to navigation or maritime commerce. See Baizley, 281 U.S. at 230-31; Perini, 459 U.S. at 306 (tracing history of "maritime but local" doctrine).[5] In fact, the constant theme of these Supreme

---

[4]The court in Brockington relies heavily on Heaney for its holding, see Brockington, 903 F.2d at 1532, but we distinguish Heaney from the other cases in the Grant Smith line and the case at bar on the grounds that in Heaney the employee plaintiff did not assert negligence on the part of his employer. See Heaney, 299 U.S. at 44.

[5]The Supreme Court tried to use the "maritime but local" doctrine to establish the boundaries of LHWCA and state workers' compensation coverage, but abandoned its efforts after such a distinction proved unworkable. See Davis, 317 U.S. at 253-56. In Davis, the Supreme Court charted a new course by recognizing the

Court opinions is that the uniformity of admiralty law must be preserved and that state law may be applied only where it works no "material prejudice to the essential features of the general maritime law." Baizley, 281 U.S. at 230. That uniformity is not to be sacrificed to accommodate state law is a fundamental premise of admiralty jurisdiction. See Grant Gilmore & Charles L. Black, Jr., The Law of Admiralty § 6-58 to § 6-61 (2d Ed. 1975). In one of its earliest pronouncements on the interplay between federal and state law in the maritime context, the Supreme Court stated:

> One thing, however, is unquestionable; the Constitution must have referred to a system of law coextensive with, and operating uniformly in, the whole country. It certainly could not have been the intention to place the rules and limits of maritime law under the disposal and regulation of the several States, as that would have defeated the uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the States with each other or with foreign states.

The Lottawanna, 88 U.S. (21 Wall.) 558, 575 (1874). This is not to say that state law may play no part in the maritime arena; rather, the flip side of this principle is that "[w]ith respect to maritime torts . . . the State may modify or supplement the maritime law . . . when the state action is not hostile to the characteristic features of the maritime law or inconsistent with federal legislation." Just v. Chambers, 312 U.S. 383, 388 (1941). For

existence of a "twilight zone" in which employees are simultaneously covered by both the LHWCA and the state workers' compensation scheme. Id. at 256. With the 1972 Amendments to the LHWCA, Congress extended the realm of concurrent jurisdiction shoreward. See Sun Ship, 447 U.S. at 720.

20

example, prior to its decision in Moragne, the Supreme Court consistently gave effect to state statutes providing a wrongful death action to the representatives of maritime workers killed during the course of employment.  See id. at 388-89; see also Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 321 (1955) (leaving the regulation of marine insurance to the states).

Our review of the Supreme Court's admiralty jurisprudence assures us of the soundness of our earlier holdings in Thibodaux and King.  As we noted supra, Thibodaux's holding was driven by the Supreme Court's decision in Pope which iterated the supremacy of federal admiralty rights over state law mandates where uniformity concerns were present.  See Thibodaux, 580 F.2d at 846.  Contrary to the Eleventh Circuit's view, see Brockington, 903 F.2d at 1531, we do not read Thibodaux and King to be limited to wrongful death actions.  We see no principled basis for distinguishing between an employee's negligence claim against his employer for wrongful death and an employee's negligence claim against his employer where the injury stops short of a fatality.  The key factor is maintaining uniformity in admiralty law and preserving the rights granted to maritime workers, not the degree of harm the worker suffers.  An action for negligence has long been a vestige of general maritime law; subjecting it to the ebbs and flows of state legislation would disrupt the essential features of admiralty law.  See Stanley Morrison, Workmen's Compensation and the Maritime Law, 38 Yale L.J. 472, 496 (1929).  Fidelity to the Supreme Court's and our own

21

precedent requires that we hold that the exclusive remedy provision of the Louisiana Workers' Compensation Act does not preclude Green from asserting his general maritime negligence claim against Vermilion for the non-fatal injuries he sustained during the course of his employment while upon navigable waters.[6]

IV

The judgment of the district court denying Green LHWCA benefits is AFFIRMED. The judgment of the district court dismissing Green's unseaworthiness and general maritime negligence claims is REVERSED. We REMAND for proceedings not inconsistent with this opinion.

---

[6]Our holding is consistent with the decision in Koninklyke Nederlandsche Stoomboot Maalschappy v. Strachan Shipping Co., 301 F.2d 741 (5th Cir.), cert. denied, 371 U.S. 921 (1962), where this court held that the exclusive remedy provision of the Texas Workers' Compensation Act did not bar a ship owner's indemnity suit against the stevedore for breach of warranty where the stevedore had made payments under the state workers' compensation scheme. As with his unseaworthiness claims, we make no comment concerning the merits of Green's negligence claim.

22