# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————————————

No. 01-60705

———————————————

BOOMTOWN BELLE CASINO; LOUISIANA WORKERS' COMPENSATION CORPORATION,

Petitioners,

versus

JERRY KATE BAZOR, Widow of Ben Bazor; DIRECTOR, OFFICE OF WORKER'S COMPENSATION PROGRAMS, US DEPARTMENT OF LABOR; GREAT-WEST LIFE AND ANNUITY INSURANCE COMPANY,

Respondents.

———————————————

Petition for Review of an Order of the
Benefits Review Board

———————————————

December 6, 2002

Before EMILIO M. GARZA and CLEMENT, Circuit Judges, and HUDSPETH,[*] District Judge.

EDITH BROWN CLEMENT:

Petitioner Boomtown Belle Casino ("Boomtown") asks this Court to set aside the Benefit Review Board's order affirming the award of compensation benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.*, to Jerry Kate Bazor ("Bazor"), widow of Ben Bazor ("the Decedent"), and reimbursement to the Decedent's health insurer, Great-

_____

[*] District Judge of the Western District of Texas, sitting by designation.

1

West Life and Annuity Insurance Company ("Great-West"). We reverse for two independent, legally sufficient reasons: Decedent did not have the employee "status" required by the LHWCA and Decedent was not injured at a "situs" covered by the LHWCA.

I.    BACKGROUND

Boomtown hired Ben Bazor as chief engineer of the "Boomtown facility," the land-based operations of the casino. The Boomtown facility comprises a personnel office, one or two warehouses, and a "main" building. The casino itself occupies a boat floating in the Harvey Canal in Harvey, Louisiana. At all times pertinent to this suit, the "main" building was yet to be completed, the Boomtown facility included a "temporary tent," and the casino boat was under construction at the Avondale shipyard and had not yet been moored at the Boomtown facility. Apparently, the temporary tent was to provide a waiting area for casino patrons after the boat was in place but before the main building was operational.

Mr. Bazor worked 40-hour weeks for his first month of employment. Beginning in his second month, Mr. Bazor worked 10-12 hours per day in preparation for the casino opening. As chief engineer, Mr. Bazor was ultimately responsible for the work of supervisors and employees in the housekeeping, maintenance, and outside grounds departments, some of whom Mr. Bazor hired during his tenure. Some of the workers under Mr. Bazor's supervision wired slot machines, data processing equipment, and security systems on the vessel while it was at Avondale. Others cleaned the boat. At some point, Mr. Bazor oversaw work to lower the point where the gangplank attached to the dock, ensuring the gangplank would not be too steep when the boat fell with the tide. Once in operation, Mr. Bazor's responsibilities on board the casino were to include general maintenance. In

2

preparation for such responsibilities, Mr. Bazor regularly visited the Avondale shipyard to note the position of wires and pipes before Avondale workers enclosed them in walls.

Eight days into his second month of employment, Mr. Bazor collapsed while under the temporary tent. Mr. Bazor was diagnosed with an aneurysmal subarachnoid hemorrhage, or stroke. Mr. Bazor never regained consciousness. He remained in intensive care for approximately forty-eight days and died in a nursing home roughly three years later. Great-West paid over $600,000 in medical expenses to and on behalf of Mr. Bazor and his family.

Bazor brought a LHWCA claim for permanent total disability benefits, pursuant to 33 U.S.C. § 908(a), and death benefits, pursuant to § 909. Great-West intervened and requested reimbursement.

The Administrative Law Judge ("ALJ") held Bazor satisfied the status and situs requirements, predicates to LHWCA coverage under § 902(3) and § 903(a), respectively. The ALJ awarded benefits to Bazor, reimbursement to Great-West, and attorney's fees to them both.

Boomtown and the Louisiana Workers' Compensation Corporation ("LWCC") appealed to the Benefits Review Board ("BRB"). The BRB affirmed. Boomtown and LWCC appealed to this Court, pursuant to § 921(c).

II.    STANDARD OF REVIEW

This Court upholds BRB decisions that are supported by substantial evidence and in accordance with law. Empire United Stevedores v. Gatlin, 936 F.2d 819, 822 (5th Cir. 1991). We review the determination of LHWCA coverage by either an ALJ or the BRB as a question of law. Hullinghorst Indus., Inc. v. Carroll, 650 F.2d 750, 753 (5th Cir. Unit A July 1981).

3

III.    DISCUSSION

A claimant must satisfy both a status and a situs requirement in order to qualify for LHWCA

coverage.  Director v. Perini N. River Assocs., 459 U.S. 297, 314 (1983).

A.    STATUS REQUIREMENT

The LHWCA covers longshoremen and harbor workers, but excludes some individuals for

various reasons:

> (3) The term "employee" means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker, but such term does not include—
>
> > (A) individuals employed exclusively to perform office clerical, secretarial, security, or data processing work;
> >
> > (B) individuals employed by a club, camp, recreational operation, restaurant,  museum, or retail outlet;
> >
> > (C) individuals employed by a marina and who are not engaged in construction, replacement, or expansion of such marina (except for routine maintenance);
> >
> > . . . .
>
> if individuals described in clauses (A) through (F) are subject to coverage under a State workers' compensation law.

§ 902(3).  Congress added § 902(3)(A)-(F) to the LHWCA in 1984.

Boomtown argues that whether an employee is excluded from coverage under § 902(3)(B)

is determined entirely by the nature of his or her employer.  See Arnest v. Miss. River Boat, Ltd., 29

BRBS 423(ALJ), 425(ALJ) (1995)   (noting the "absurdity" that a Biloxi Belle Casino's pit

manager/floor supervisor, but not the casino's bartenders and gift shop sales clerks, would be covered

by the LHWCA);  Peters v. Roy Anderson Bldg. Corp., 29 BRBS 437(ALJ), 442(ALJ) (1995)

4

(granting a ship cleaner LHWCA coverage because her employer, a general contractor, was not expressly excluded by statute). Boomtown asserts that because a casino is a "recreational operation," its employees are categorically denied LHWCA coverage under § 902(3)(B). The law is more nuanced than Boomtown acknowledges.

In Green v. Vermillion Corp., this Court looked at the club and camp exceptions in § 902(3)(B). 144 F.3d 332, 335 (5th Cir. 1998). Green worked as cook, watchman, and general repairman at a hunting camp but was employed by a corporate entity with operations from trapping alligators to rice farming. Green sought LHWCA coverage, arguing § 903(3)(B)'s club or camp exclusion did not apply because he was not an individual *employed by* a club or camp. Id. The district court rejected this argument, stating such a "construction of § 902(3)(B) renders the exception meaningless in today's world of business organizations." Id. We affirmed and provided a test in situations of conglomerate employers. "Green worked *exclusively to further an operation which comports with the plain meaning* of the terms 'camp' and 'club.' . . . Since Green was employed *solely to render services to promote and maintain* a duck camp, we hold that he is excluded from LHWCA coverage under § 902(3)(B)." Id. (emphasis added). In passing, Green noted the legislative history of the Act's 1984 amendments did not alter its conclusion. Id.[2]

Bazor resists the plain language of § 902(3)(B) with the legislative history mentioned in Green, and with Huff v. Mike Fink Restaurant, Benson's Inc., 33 BRBS 179 (1999). Huff, the BRB's first opportunity to address the § 902(3)(B) exclusion, id. at 181, rejected a categorical

---

[2] The legislative history states: "some enterprises which are provided with exclusions under sections [902(3)(B) and (C)] because of the nature of the employing enterprise may in fact employ workers who should remain covered by the Act because of the nature of the work which they do, or the nature of the hazards to which they are exposed." H.R. REP. NO. 98-570, pt. 1, at 4 (1984), *reprinted in* 1984 U.S.C.C.A.N. 2734, 2737.

exemption from coverage for individuals employed by entities listed in § 902(3)(B). Id. at 185. Instead, Huff adopted for status inquiries under § 902(3)(B) the status test developed prior to the 1984 amendments: "in determining whether a claimant is a covered maritime employee under the Act, the inquiry centers on the claimant's assignable duties at the time of injury, not the corporate purpose or structure of the employer." Id. at 185; see generally Northeast Marine Terminal Co. v. Caputo, 432 U.S. 249, 269-74 (1977) (analyzing § 902(3)(B)). The BRB found its reasoning in Shano v. Rene Cross Construction, 32 BRBS 221 (1998) (adopting Caputo test for § 902(3)(C) inquiries) persuasive, and cited Green as support for its conclusion. Huff, 33 BRBS at 185.

We agree with Boomtown that the § 902(3)(B) coverage exclusion turns, as an initial matter, on the nature of the employing entity, and not on the nature of the duties an employee performs. The plain language of § 902(3)(B) excludes from coverage "individuals employed by a club, camp, recreational operation, restaurant, museum, or retail outlet" without reference to the nature of the work they do. Accord 1984 U.S.C.C.A.N. at 2737 (Paragraphs 902(3)(B) and (C) "exclude employees because of the nature of the employing enterprise, as opposed to the exclusions in paragraph 2(3)(A), which are based on the nature of the work which the employee is performing."). It is true the legislative history states "that some enterprises which are provided with exclusions under sections [902(3)(B) and (C)] because of the nature of the employing enterprise may in fact employ workers who should remain covered by the Act because of the nature of the work which they do, or the nature of the hazards to which they are exposed." Id. But the statute itself carves away the coverage exception based upon the nature of an employee's work only in § 903(3)(C), with respect to individuals employed by a marina. Hence, we are not persuaded by Huff's adoption of Shano's reasoni

6

ng for § 903(3)(B), where Congress declined to carve away the coverage exception.

The parties did not seriously argue whether a floating casino is a "recreational operation" for purposes of § 902(3)(B). We hold that it is. Consequently, Decedent is not covered by the LHWCA. Even if we entertained the idea that Boomtown was a conglomerate with multiple business endeavors, one of which was longshoring, Decedent does not satisfy the status requirement under the Green test. Decedent was hired as the chief engineer of the Boomtown facility. All of his duties of (1) maintaining the Boomtown facility, (2) sending employees to wire slot machines, data processing

7

equipment, and security systems, and (3) sending employees to clean the boat, exclusively furthered the operation of the casino. Under the language of the statute, Decedent, as an employee of a recreational operation, is not covered by the LHWCA even if some of his duties expose him to the hazards associated with maritime commerce.

B.      SITUS REQUIREMENT

Boomtown contends Decedent does not satisfy the situs requirement of the LHWCA. We agree. The LHWCA provides a recovery

> if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel).

33 U.S.C. § 903(a).

Whether an adjoining area is a § 903(a) situs is determined by the nature of the adjoining area at the time of injury. See Nelson v. Guy F. Atkinson Constr. Co., 29 BRBS 39, 41 (1995) (holding that powderman injured while digging a lock on the Columbia River did not satisfy the "situs" element because the site had yet to be used for maritime commerce). At the time of Decedent's stroke, the Boomtown facility had yet to be used for a maritime purpose. Nobody had loaded or unloaded cargo, and nobody had repaired, dismantled, or built a vessel.

Bazor seeks to avoid this result with an early Fifth Circuit case proposing that the situs requirement is governed by whether the situs "clearly played an integral role in employer's overall maritime enterprise thereby qualifying as an adjoining area under the Act." Texports Stevedore Co. v. Winchester, 632 F.2d 504, 507-508 (5th Cir. 1980). Bazor notes the tent's integral role in Boomtown's operation: the tent was within 50-300 feet of the Harvey Canal, the tent was to be used

8

for passengers waiting to embark, and the tent and vessel were to be connected by a covered walkway. Bazor's appeal to the broad language in <u>Texports</u> is unavailing, as that case considered the geographic dimension to "adjoining areas" and not the temporal dimension.

IV.    CONCLUSION

For the reasons stated, we reverse the order of the Benefits Review Board.

REVERSED.

9