**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CHERYL PERU,

*Petitioner,*

v.

SHARPSHOOTER SPECTRUM VENTURE
LLC; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION
PROGRAMS,

*Respondents.*

No. 05-75337

OWCP Nos.
BRB-04-0929
LHC-2722

OPINION

On Petition for Review of an Order of the
Office of Workers' Compensation Programs

Argued and Submitted
November 13, 2006—Honolulu, Hawaii

Filed June 27, 2007

Before: Stephen S. Trott, Kim McLane Wardlaw, and
William A. Fletcher, Circuit Judges.

Opinion by Judge William A. Fletcher

**COUNSEL**

Jay Lawrence Friedheim, Honolulu, Hawaii, Joshua T. Gillelan, II, Longshore Claimants' National Law Center, Washington, D.C., for the petitioner.

Michael Formby, Frame Formby and O'Kane, Honolulu, Hawaii, for respondent Sharpshooter Spectrum Venture.

Thomas Shepard, Benefits Review Board, Washington, D.C., Carol DeDeo, Mark A. Reinhalter, Barry H. Joyner, Michael Niss, United States Department of Labor, Office of the Solicitor, Washington, D.C., for the respondent.

**OPINION**

W. FLETCHER, Circuit Judge:

In this petition for review, we must determine whether an employee of a company that shoots, processes, and sells photographs to tourists on a historic naval ship is entitled to collect benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901-950 (2006), or is barred from recovery by the LHWCA's express exclu-

sion of "individuals employed by a . . . museum[ ] or retail outlet." 33 U.S.C. § 902(3)(B). We hold that in determining the applicability of § 902(3)(B), we must look not only at the nature of a claimant's employer but also at the nature of the claimant's particular workplace and duties. In this case, we conclude that petitioner falls within the scope of the "retail outlet" exclusion at § 902(3)(B) because both her employer's business and her own employment activities focused, in substantial part, on retail sales and, moreover, had little connection to traditional maritime activities. Because an employee may be excluded from LHWCA benefits under § 902(3)(B) only if he or she is covered by state workers' compensation, however, we remand the case for a determination whether petitioner is eligible for benefits under Hawaii law.

## I. Background

On November 17, 2002, while petitioner Cheryl Peru was ascending a ladder inside the *USS Missouri*, she hit her head, sustaining head and neck injuries. Peru worked for respondent Sharpshooter Spectrum Venture, LLC ("SSV"), the "exclusive provider of photographic and imaging concession services for visitors" to the famous World War II battleship, which is now moored at Pearl Harbor and open to the public. SSV employees greet tourists as they enter the *USS Missouri* and ask permission to take their photographs. The employees then shoot photographs of the tourists at several locations on the ship and the nearby pier. They process the photographs in a mobile trailer "lab" located on the pier and offer them for sale at a designated sales area, also located on the pier.

When Peru started at SSV in July 2001, she worked as a photographer. Peru subsequently was promoted to a sales job and then to a position as assistant manager. As assistant manager, Peru performed a variety of administrative tasks, but also continued to do greeting, sales, and photography work as needed. At the time of her accident, Peru, loaded with camera

equipment, was making her way to the *USS Missouri*'s captain's room to photograph a tour group.

Following her injury, Peru was unable to continue in her old job. Peru attempted to apply for Hawaii Workers' Compensation benefits in late November 2002, but, for reasons that are not clear from the record, SSV's claims adjustor denied she was eligible. Peru then filed a claim with the Department of Labor's Office of Workers' Compensation Programs for compensation under the LHWCA. SSV again disputed Peru's claim for benefits, arguing that she was not covered by the LHWCA. After a hearing, the Administrative Law Judge ("ALJ") held that Peru was not covered by the LHWCA because she was an employee of a "museum," a category of worker expressly excluded from LHWCA benefits under 33 U.S.C. § 902(3)(B). Alternately, the ALJ held that Peru was employed by a "retail outlet," and thus fell within another category of worker excluded under § 902(3)(B).

Peru appealed the ALJ's decision to the Benefits Review Board ("BRB" or "Board"). The BRB affirmed the ALJ's holding that Peru was excluded from LHWCA coverage as an employee of a retail outlet based on SSV's sales of photographs to tourists on the pier and Peru's employment duties in furtherance of this sales activity. It declined to reach the question of whether she was employed by a museum. Peru now petitions for review of the BRB's decision. We have jurisdiction to review the denial of benefits pursuant to 28 U.S.C. § 1291. We affirm the BRB's holding that Peru falls under the retail outlet exclusion at § 902(3)(B) but remand for further proceedings.

## II. Standard of Review

Whether an employee who seeks benefits is covered by the LHWCA is a mixed question of fact and law. *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 553-54 (1997). Where, as here, the underlying facts are undisputed, LHWCA coverage

is decided as a matter of law. *See id.* We review "questions of law, including interpretations of the LHWCA," de novo. *Gen. Const. Co. v. Castro*, 401 F.3d 963, 965 (9th Cir. 2005). Because the BRB is not a policymaking body, its construction of the LHWCA is not entitled to any "special deference." *M. Cutter Co. v. Carroll*, 458 F.3d 991, 993 (9th Cir. 2006) (internal quotation marks omitted). However, we will " 'respect the Board's interpretation of the [LHWCA] where such interpretation is reasonable and reflects the policy underlying the statute.' " *Id.* (quoting *McDonald v. Dir., OWCP*, 897 F.2d 1510, 1512 (9th Cir. 1990)).

## III. Scope of the LHWCA

Two federal acts provide no-fault compensation to workers injured on or adjacent to navigable waters. The Jones Act covers "seam[e]n." 46 U.S.C. § 30104(a) (formerly 46 U.S.C. § 688(a)). The LHWCA covers certain land-based maritime "employee[s]." 33 U.S.C. § 903(a). Those not eligible for recovery under either federal act are covered by state workers' compensation laws. *See McGray Const. Co. v. Dir., OWCP*, 181 F.3d 1008, 1011 (9th Cir. 1999) ("[T]he question is not whether an employee will be left out in the cold, but only which scheme covers him."). Peru contends that she is entitled to recover under the LHWCA.

### A. Status and Situs Requirements for LHWCA Coverage

**[1]** The Supreme Court has explained that to qualify for LHWCA compensation, a worker ordinarily must satisfy both a "situs" requirement and a "status" requirement. *Dir., OWCP v. Perini N. River Assocs.*, 459 U.S. 297, 299 (1983). It is undisputed that Peru was injured on "navigable waters" or "certain adjoining land areas," namely, on board the *USS Missouri*, and therefore satisfies the situs requirement. *Id.*; *see also* 33 U.S.C. § 903(a). But SSV argues that Peru does not satisfy the status requirement.

**[2]** Congress added an express status requirement to the LHWCA in 1972, specifying who qualifies as an "employee" covered by the act. In 1984, Congress enumerated specific types of workers who do *not* qualify as employees under the LHWCA. The LHWCA now provides that

> [t]he term "employee" means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker, but such term does not include —
>
> (A)   individuals employed exclusively to perform office clerical, secretarial, security, or data processing work;
>
> (B)   *individuals employed by a club, camp, recreational operation, restaurant, museum, or retail outlet*;
>
> (C)   individuals employed by a marina and who are not engaged in construction, replacement, or expansion of such marina (except for routine maintenance);
>
> (D)   individuals who (i) are employed by suppliers, transporters, or vendors, (ii) are temporarily doing business on the premises of an employer described in paragraph (4), and (iii) are not engaged in work normally performed by employees of that employer under this chapter;
>
> (E)   aquaculture workers;
>
> (F)   individuals employed to build, repair, or dismantle any recreational vessel under sixty-five feet in length;

(G)    a master or member of a crew of any vessel; or

(H)    any person engaged by a master to load or unload or repair any small vessel under eighteen tons net;

if individuals described in clauses (A) through (F) are subject to coverage under a State workers' compensation law.

33 U.S.C. § 902(3) (emphasis added).

Congress's creation of an express status requirement coincided with its relaxation of the situs requirement. "Before the 1972 Amendments, it was only necessary for an injured employee to satisfy a situs requirement"; however, under the situs requirement then in effect, "the injury had to have occurred upon the navigable water of the United States." *Ramos v. Universal Dredging Corp.*, 653 F.2d 1353, 1356 (9th Cir. 1981). In 1972, Congress extended LHWCA coverage to individuals injured on areas "adjoining" navigable waters, including " 'any . . . pier, wharf, dry dock, terminal, building way, [or] marine railway,' " in order to "avoid anomalies inherent in a system that drew lines at the water's edge." *Ne. Marine Terminal Co. v. Caputo*, 432 U.S. 249, 279, 281 (1977) (quoting 33 U.S.C. § 903(a)). The expansion of the situs covered by the LHWCA "to include rather large shoreside areas necessitated an affirmative description of the particular employees working in those areas who would be covered." *Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 423 (1985).

**[3]** Both we and the Supreme Court have construed the general definition of "employee" in the first paragraph of 33 U.S.C. § 902(3) narrowly to encompass only those employees "engaged in loading, unloading, repairing, or building a vessel." *McGray Const. Co.*, 181 F.3d at 1012 (quoting *Herb's*

*Welding, Inc.*, 470 U.S. at 424) (internal quotation marks omitted). Peru clearly does not fall within this definition.

**[4]** However, the Supreme Court, in *Perini*, concluded that Congress, in enacting the 1972 amendments, intended to broaden, not narrow, the LHWCA's overall coverage. 459 U.S. at 315. The Court thus held that individuals who would have qualified for LHWCA benefits prior to 1972 because they were injured on navigable waters would not be excluded from coverage because they were not engaged in traditional maritime employment, so long as they did not fall under one of the act's express exclusions. *Id.* at 324. As the Second Circuit explained in *Lockheed Martin Corp. v. Morganti*, 412 F.3d 407 (2d Cir. 2005), under *Perini*, "certain kinds of situs" will also "fulfill the status requirement." *Id.* at 412. It is undisputed that Peru was injured on navigable waters. Therefore, under *Perini*, we agree with the BRB that Peru is eligible for coverage under the LHWCA "absent the applicability of any exclusions."

## B. "Retail Outlet" Exclusion

SSV argues that even if Peru satisfies the LHWCA's situs and status requirements, she nonetheless falls under one of the act's express exclusions. SSV first argues that Peru is excluded from LHWCA coverage as an individual "employed by a . . . retail outlet." 33 U.S.C. § 902(3)(B). Both the ALJ and the BRB agreed. The ALJ did not engage in statutory construction of the phrase "retail outlet," remarking simply that "[SSV] operates as a retail outlet, taking photographs of tourists while they tour the Battleship Missouri and selling the photographs to the tourists at the completion of their tour." The BRB, after considering the language and history of the LHWCA, determined that the phrase "retail outlet" encompasses any place where items are sold to consumers. It rejected Peru's arguments in favor of a more restrictive reading of "retail outlet" that would include only (1) stores "in the traditional sense of having four walls and a front door," (2)

selling a "variety" of goods, (3) produced or manufactured by a third party. Peru renews those arguments on appeal.

[5] The question of what is a "retail outlet" for purposes of the LHWCA appears to be one of first impression. When construing the LHWCA, we begin with its plain language. *Stevedoring Servs. of Am. v. Price*, 382 F.3d 878, 890 (9th Cir. 2004) (as amended). We also consider whether a particular interpretation is supported by the act's history, *see id.*, and by the policies animating the act. *See Gilliland v. E.J. Bartells Co.*, 270 F.3d 1259, 1263 (9th Cir. 2001).

[6] Because the LHWCA does not define the phrase "retail outlet," we must look to its "ordinary, contemporary, common meaning." *United States v. Rowland*, 464 F.3d 899, 904-05 (9th Cir. 2006) (quoting *United States v. Smith*, 155 F.3d 1051, 1057 (9th Cir. 1998)). In its decision, the BRB quoted the *American Heritage Dictionary* (4th ed. 2000) definition of "retail": "[t]he sale of goods or commodities in small quantities directly to consumers." *Id.* at 1487. *Black's Law Dictionary* (8th ed. 2004) defines "retail" as "[t]he sale of goods or commodities to ultimate consumers, as opposed to the sale for further distribution or processing." *Id.* at 1341. Both definitions suggest that the key factor in determining whether sales activity is retail is the identity of the purchaser, not the physical structure where the sales activity takes place, the selection of goods offered, or the nature of the seller. That is, sales activity directed at ultimate purchasers ("consumers") is retail, as opposed to wholesale sales activity directed at purchasers who will further process, distribute, or resell the items. *See id.* at 1628 (defining "wholesale"). The term "outlet," broadly defined by the *American Heritage Dictionary* as "[a] commercial market for goods or services," *supra*, at 1249, does not alter this conclusion as it does not imply a particular type of market, goods, or seller. Therefore, looking to the plain language of the LHWCA, we conclude that the BRB's interpretation of the phrase "retail outlet" to mean any

place where items are sold directly to consumers is reasonable.

The BRB's reading of "retail outlet" is also consistent with the legislative history and policy of the LHWCA. The House Education and Labor Committee Report on the 1984 Amendments to the act — which added the express exclusions in 33 U.S.C. § 902(3)(B) — offered, as an example of "individuals employed by a . . . retail outlet,"

> Sales clerks, stockroom personnel and related personnel of a retail outlet built over the navigable waterways or adjacent to such waterways . . . . On the other hand, a worker employed by such an enterprise to build an addition to the retail outlet, or to repair the pier upon which the store is located, would not be excluded, and would remain within the Act's coverage.

H.R. Rep. No. 98-570, at 4-5 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 2734, 2737-38. However, as the BRB noted, this example was intended to be "illustrative" rather than "necessarily exclusive," and thus does not suggest that Congress intended the phrase "retail outlet" to encompass only permanent structures with stockrooms. *See id.* In fact, the report elsewhere makes clear that § 902(3)(B) was designed "to exclude from the term 'employee', and thus from the coverage of the Longshore Act, certain categories of . . . individuals who are *employed by enterprises which are not generally viewed as maritime employers, although located on or adjacent to navigable waters*, and who are not otherwise exposed to maritime hazards." *Id.* at 3; 1984 U.S.C.C.A.N. at 2736 (emphasis added).

## IV. Employment by a Retail Outlet

Having affirmed the BRB's interpretation of the phrase "retail outlet" as encompassing any place where items are sold

directly to consumers, we now turn to the question of whether Peru was "employed by" such an enterprise when she was injured. While we know of no cases addressing the specific retail outlet exclusion at issue here, a handful of cases have dealt with other excluded enterprises enumerated in § 902(3)(B). The courts in these cases have questioned whether, in applying the exclusions in § 902(3)(B), they should focus on "the nature of [the claimant's] employer," *Boomtown Belle Casino v. Bazor*, 313 F.3d 300, 302 (5th Cir. 2002), or instead on the nature of the employee's "assignable duties at the time of injury," *Huff v. Mike Fink Rest., Benson's Inc.*, 33 B.R.B.S. 179, 185 (1999) (per curiam) (quoting *Shano v. Rene Cross Constr.*, 32 B.R.B.S. 221, 223 (1998)) (internal quotation marks omitted). For at least two reasons, most courts have not looked simply at the identity of the employer, but have also taken into account the employee's specific work environment and duties. *Cf. Bazor*, 313 F.3d at 303-04.

First, as the Fifth Circuit recognized in *Green v. Vermilion Corp.*, 144 F.3d 332 (5th Cir. 1998), many employers are "multi-faceted corporation[s]," engaged in different types of activities, some of which fall within the definition of an excluded enterprise, but others which do not. *Id.* at 335. Thus, although the language of § 902(3)(B) refers to employment "by" rather than "at" an excluded enterprise, the court in *Green* concluded that in applying the exclusion provision it is necessary to conduct a particularized assessment of the nature of an individual's employment. *Id.* In *Green*, the claimant's employer, Vermilion, was engaged in "sundry business ventures" on "marsh land near a private canal off a [Louisiana] bayou." *Id.* at 334-35. Vermilion harvested and sold alligator eggs, trapped and sold alligators, trapped fur-bearing animals, shrimped, farmed rice, and ran a "duck camp." *Id.* at 334. Green worked for Vermilion as a cook and watchman at the duck camp and also "occasionally assisted in mooring and unloading supply boats that docked" at the camp. *Id.* One day, as he was helping to moor a boat, Green slipped and injured

his neck and back. *Id.* The Fifth Circuit held that Green was excluded from LHWCA coverage under § 902(3)(B) as an "individual employed by a . . . club, [or] camp." *Id.* at 335. The court reasoned that even though Vermilion's business was not exclusively a camp, "Green worked exclusively to further an operation which comport[ed] with the plain meaning of the terms 'camp' and 'club,' " and performed duties that did not, "or only minutely, involve[d] maritime activities and . . . expos[ure] to hazards associated with traditional maritime activities." *Id.*; *see also Bazor*, 313 F.3d at 303.

Second, as noted by the Fifth Circuit in *Green* and by the BRB in *Huff*, the legislative history for the 1984 amendments strongly suggests that Congress intended application of § 902(3)(B) to be guided by both the identity of the claimant's employer and the conditions of his or her employment. *Green*, 144 F.3d at 335; *Huff*, 33 B.R.B.S. at 182. The House report explains that § 902(3) was designed to exclude "certain categories of workers who are not engaged in maritime occupations or who are not exposed to maritime hazards *even though they may be employed by maritime employers*." H.R. Rep. No. 98-570, at 3, 1984 U.S.C.C.A.N. at 2736 (emphasis added). By the same measure, according to the report,

> some enterprises which are provided with exclusions under [§ 902(3)(B)] . . . because of the nature of the employing enterprise may in fact employ workers who should remain covered by the act because of the nature of the work which they do, or the nature of the hazards to which they are exposed.

*Id.* at 4; 1984 U.S.C.C.A.N. at 2737. Relying on this analysis, the BRB held, in *Huff*, that a worker was covered by the LHWCA despite the fact that his duties involved maintaining a restaurant paddle-wheel vessel and adjoining dock. After explaining that the § 902(3)(B) inquiry properly focuses on the "day to day activities" of the claimant rather than simply on the "corporate purpose or structure of the employer," the

BRB determined that while Huff's duties "clearly further[ed] the operation of the restaurant," his "overall job duties . . . constitute[d] the traditional maritime duties of a harbor-worker" rather than those of a "food service" employee. *Huff*, 33 B.R.B.S. at 182 (internal quotation marks omitted). The BRB observed that "[i]t is apparent that Congress did not intend the coverage of a harbor master and a salad bar worker to be determined solely by whether they were both paid by a restaurant." *Id.*

**[7]** The approach advocated by *Green* and *Huff* responds to the complexities of modern business structures in a flexible, pragmatic way. This approach is also consistent with Congress's goal, in passing the 1984 amendments, of ensuring that LHWCA benefits are channeled to those with employment duties involving traditional maritime activities and hazards. Following *Green* and *Huff*, we hold that in ascertaining whether the § 902(3)(B) exclusion applies, it is necessary to look both at the identity of the employer and at the employee's specific work environment and duties.

In Peru's case, the ALJ wrote that "[SSV] operates as a retail outlet, taking photographs of tourists while they tour the Battleship Missouri and selling the photographs to the tourists at the completion of their tour." The BRB concluded that "[SSV] sells photographs, on the pier, that its employees have taken of tourists" and that "the sale of photographs is a retail function and therefore is sufficient to bring employer's employees within the exclusion of [§ 902(3)(B)]." While we agree with the ALJ and the BRB that Peru falls within the retail outlet exclusion at § 902(3)(B) because neither SSV's operations nor Peru's work duties can be considered purely retail in nature, we think that a somewhat more extended analysis is required.

**[8]** Based on the undisputed facts, and on the definition of "retail outlet" discussed above, SSV's operation of a stand or booth on the pier, from which it sells photographs to tourists,

undoubtedly constitutes the operation of a "retail outlet." However, SSV does not merely sell photographs to tourists; it also shoots and processes these photographs — functions that fall outside the plain meaning of retail sales. Nor did Peru, in the position of assistant manager she held at the time of her injury, simply sell photographs. Instead, she also shot and processed photographs and discharged various administrative tasks. Following *Green* and *Huff*, we decline to conclude that Peru falls within the retail outlet exclusion at § 902(3)(B) simply because her employer, SSV, engages in some activity that is retail in nature. Nor do we find dispositive in itself the fact that the photograph shooting and processing activities of SSV employees, including Peru, "clearly further[ed] the operation of" SSV's retail outlet. *Huff*, 33 B.R.B.S. at 182.

One can imagine, for example, a large corporation that hires employees to run a booth on a scenic pier where it sells t-shirts to tourists, and also hires employees to operate a warehouse on a nearby dock, where its clothing is unloaded from ships before being transported to the booth for sale. Clearly, the hypothetical corporation operates a "retail outlet" within the meaning of that phrase as discussed above. Moreover, in some non-trivial sense, all of the hypothetical corporation's employees further the operation of its retail outlet. Yet we think that it would be inconsistent with the legislative history and policy of the LHWCA to exclude from coverage those employees who unload cargo on the dock. Indeed, we are inclined to think that even an employee who works both selling t-shirts at the booth and unloading cargo at the dock would be covered under the LHWCA, provided that his or her unloading activities were more than de minimis. *See Caputo*, 432 U.S. at 273; *Alcala v. Dir., OWCP*, 141 F.3d 942, 945 (9th Cir. 1998).

**[9]** What makes Peru's case different from the hypothetical is that neither SSV, as an employing entity, nor any of its employees, appear to engage in core traditional maritime

activities. It is true that SSV employees like Peru who take photographs on the *USS Missouri* face somewhat unique workplace risks by virtue of the fact that a ship's architecture and surroundings are different than those of an office building. However, the same is true of a salad bar worker on a restaurant paddle-wheel vessel and perhaps even, to a lesser extent, of a salesperson in a retail shop located on a pier. Given that a substantial, if not the substantial, part of both SSV's business and Peru's employment activities revolved around operation of a retail outlet, and absent any evidence that either SSV's business or Peru's employment activities had any substantial connection to traditional maritime activities, we conclude that the BRB's holding that Peru falls within the retail outlet exclusion at § 902(3)(B) is correct.

Because we agree with the BRB that Peru falls under the provision expressly excluding from LHWCA coverage "individuals employed by a . . . retail outlet," we do not reach the question of whether she was also employed by a museum.

## V. State Workers' Compensation Law

**[10]** While we hold that Peru falls within the scope of the "retail outlet" exclusion in § 902(3)(B), our holding does not entirely resolve the question of whether she is barred from recovering benefits under the LHWCA. Section 902(3) expressly provides that "individuals described in clauses (A) through (F)" are excluded from LHWCA coverage *only* if they "are subject to coverage under a State workers' compensation law." 33 U.S.C. § 902(3). The House report explained that Congress intended "[a]ll of the exemptions from the definition of 'employee' found in . . . the bill [to be] applicable only to the extent that the exempted workers would be covered by the workers' compensation law of the state in which they are employed." H.R. Rep. No. 98-570 at 5; 1984 U.S.C.C.A.N. at 2738. It continued: "If the state law does not cover such workers *for any reason*, they would remain under the coverage of the Longshore Act." *Id.* (emphasis added).

While the record indicates that SSV objected to Peru recovering state workers' compensation benefits, the validity and legal force of its objections are unclear. What the LHWCA's express language, and its legislative history, do make clear is that, contrary to the position taken by SSV, Peru cannot be per se ineligible for both state workers' compensation benefits and LHWCA benefits. Therefore, we remand Peru's case to the BRB to determine in the first instance whether she is covered by Hawaii's state workers' compensation law. Should the BRB conclude that Peru is not covered by the state law for any reason, she is eligible for LHWCA benefits.

## Conclusion

For the foregoing reasons, we affirm the BRB's holding that Peru falls within the "retail outlet" exclusion at 33 U.S.C. § 902(3)(B), but remand for further proceedings consistent with this opinion.

REMANDED. Each side to bear its own costs.